**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No.   14-cr-00169-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**1.  JOHN BOWEN,**
**2.  DANIEL BERNIER,**
**3.  JAMES JOHNSON,**
**4.  DONALD CREAGER III,**
**5.  ORLANDO MARTINEZ,**
**6.  KENNETH CHASTAIN,**
**7.  ALTAF HUSSAIN DANDIA aka "Dandy",**
**8.  PETER KARFIAS, and**
**9.  STEPHANIE CHRISTENSEN,**

      Defendants.

---

**INDICTMENT**
**18 U.S.C. § 371**
**(Conspiracy to Defraud the United States and Violate the Controlled Substances Act)**
**18 U.S.C. § 1001**
**(False Statements)**
**21 U.S.C. § 841(a)**
**(Distribution and Possession with the Intent to Distribute a Controlled Substance)**
**21 U.S.C. § 843(b)**
**(Unlawful Use of Communications Facility)**
**18 U.S.C. § 1957**
**(Money Laundering Greater than $10,000)**
**18 U.S.C. § 1956(h)**
**(Conspiracy to Commit Money Laundering)**
**and**
**18 U.S.C. § 2**
**(Aiding and Abetting)**

**NOTICE OF FORFEITURE**

---

The Grand Jury charges:

At all times relevant to this Indictment:

## INTRODUCTION

1. The United States Drug Enforcement Administration ("DEA") was the agency of the United States responsible for enforcing the provisions of the Controlled Substances Act (the "CSA").  The DEA's responsibilities, among other things, included regulating the manufacture and distribution of controlled substances.

2. The United States Food and Drug Administration ("FDA") was the agency of the United States responsible for enforcing the provisions of the Federal Food, Drug, and Cosmetic Act (the "FDCA").  The FDA's responsibilities included regulating the manufacture, labeling, and distribution of drugs shipped or received in interstate commerce.

3. Under the FDCA, drugs were defined as, among other things, articles intended for use in the cure, mitigation, treatment or prevention of disease in people; articles intended to affect the structure or function of the human body; and articles intended for use as components of drugs.

4. A "new drug" was, among other things, any drug not generally recognized among qualified experts as both safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof. 21 U.S.C. § 321 (p). A "new drug" could not be lawfully introduced or delivered for introduction into interstate commerce unless an approval of that drug had been granted by the FDA through the New Drug Application (NDA) process. 21 U.S.C. §§ 331(d) and 355.

5. "10X," "20X," "XXX," "XXX Extreme," "Requiem," "Crazy Clown," and "Sunburst" are all products associated with **The Really Cool Stuff Company** and **Heart of Asia** that contained ADB-Pinaca, AB-Fubinaca, or other drugs, new drugs and controlled substances.

6. All the controlled substances, whether state or federal, alleged herein are drugs and new drugs.

7.      The FDA has never approved ADB-Pinaca, AB-Fubinaca or the labeling for "10X," "20X," "XXX," "XXX Extreme," "Requiem," "Crazy Clown," and "Sunburst" for lawful use in the United States.

8.      "10X," "20X," "XXX," "XXX Extreme," "Requiem," "Crazy Clown," and "Sunburst" were trade names used by the defendants, the **Really Cool Stuff Company** and **Heart of Asia,** and other business entities, to further their efforts in distributing ADB-Pinaca, AB-Fubinaca and other new drugs and controlled substances.

9.      "10X," "20X," "XXX," "XXX Extreme," "Requiem," "Crazy Clown," and "Sunburst" are also known by the defendants and the public as "Spice" and synthetic cannabinoids.

10.     "10X," "20X," "XXX," "XXX Extreme," "Requiem," "Crazy Clown," and "Sunburst," as "Spice" or synthetic cannabinoids are consumed by humans.

11.     On February 10, 2014 and continuing thereafter, ADB-Pinaca and AB-Fubinaca were controlled substances pursuant to the CSA.  Further, said substances were at all times relevant herein, cannabinoids and controlled substances pursuant to Colorado law.

## THE BUSINESS ENTITIES

12.     **THE REALLY COOL STUFF COMPANY LLC** (sometimes referred to herein as "**The Really Cool Stuff Company**"), is a limited liability corporation incorporated in August 2012 and doing business under the laws of the state of Florida. **JOHN BOWEN** was the Registered Agent for this entity. This entity, through its agents, managing members and representatives, including **JOHN BOWEN** and **DANIEL BERNIER**, marketed and distributed drugs, new drugs and controlled substances under the trade names  "10X," "20X," "XXX," "XXX Extreme," "Requiem," "Crazy Clown," and  "Sunburst", among others.

13.      **HEART OF ASIA IMPORTERS LLC** (sometimes referred to herein as "**Heart of Asia**"), is a limited liability corporation incorporated in September 2013 and doing business under the laws of the state of Colorado.  **JOHN BOWEN** was the Registered Agent for this entity. This entity, through its agents, members and representatives, including **JOHN BOWEN** and **DANIEL BERNIER**, marketed and distributed drugs, new drugs and controlled substances under the trade names  "10X," "20X," "XXX," "XXX Extreme," "Requiem," "Crazy Clown," and  "Sunburst", among others.

14.      **BOWEN AND BERNIER INVESTMENTS LLC** (sometimes referred to herein as "**Bowen and Bernier Investments**"), is a limited liability corporation incorporated in April 2012 and doing business under the laws of the state of Florida. **JOHN BOWEN** was the registered manager for this entity. This entity, through its agents, managing members and representatives, including **JOHN BOWEN** and **DANIEL BERNIER**, did business as "**Great American Herbal**."

15.      **D.L.C. Corporation**, doing business as "**Creager Mercantile Co.**," (sometimes collectively referred to herein as "**Creager Warehouse**"), is a corporation incorporated and doing business under the laws of the state of Colorado.  These entities, through its agents and representatives, including **DONALD CREAGER III**, purchased, marketed and distributed drugs, new drugs, and controlled substances under the trade names  "10X," "20X," "XXX," "XXX Extreme," "Requiem," and "Crazy Clown," among others.

16.      **ORLANDO MARTINEZ** at various times during the times described in this Indictment was doing business under the trade name of **"O's Pipes and Tobacco"** and **"O's Pipes and Tobacco LLC"** (sometimes referred to collectively herein as "**O's Pipes and Tobacco**"), doing business in the state of Colorado.  **ORLANDO MARTINEZ** and his business

4

entities, individually and through its agents and representatives, purchased, marketed and distributed drugs, new drugs, and controlled substances under the trade names "10X," "20X," "XXX," "XXX Extreme," "Requiem," and "Crazy Clown," among others.

17.    **AVALON ON 4th LLC** (sometimes referred to herein as "**Avalon**"), is a limited liability corporation, incorporated and doing business under the laws of the state of Wisconsin. This business entity, through its agents and representatives, including **KENNETH CHASTAIN**, purchased, marketed and distributed drugs, new drugs, and controlled substances under the trade name "Sunburst," among others.

18.    **MAIN STOP Inc.** (sometimes referred to herein as "**Main Stop**"), is a corporation incorporated and doing business under the laws of the state of Illinois. This business entity, through its agents and representatives, including its President **ALTAF HUSSAIN DANDIA**, purchased, marketed and distributed drugs, new drugs, and controlled substances under the trade name "Sunburst," among others.

19.    **FKR LLC,** at various times doing business as **"Liquor and Tobacco Depot", "Tobacco Hut"** and **"Tobacco Hut Inc."** (sometimes collectively referred to herein as "**Tobacco Hut**"), is a limited liability corporation, incorporated and doing business under the laws of the state of Nebraska.  This business entity, through its officers, agents and representatives, including **PETER KARFIAS** and **STEPHANIE CHRISTENSEN,** purchased, marketed and distributed drugs, new drugs, and controlled substances under the trade name "Sunburst," among others.

## THE INDIVIDUAL DEFENDANTS

20.    **JOHN BOWEN** (sometimes referred to herein as "**BOWEN**") was an owner, principal and manager of **The Really Cool Stuff Company** and **Heart of Asia**. Individually, and

through these business entities, he marketed, sold and managed the enterprise distributing drugs, new drugs and controlled substances under the trade names of "10X," "20X," "XXX," "XXX Extreme," "Requiem," "Crazy Clown," and "Sunburst," among others, throughout the United States.

21.     **DANIEL BERNIER** (sometimes referred to herein as "**BERNIER**") was an owner, principal, manager or authorized representative of **The Really Cool Stuff Company** and **Heart of Asia**. Individually, and through these business entities, he marketed, sold and managed the enterprise distributing drugs, new drugs and controlled substances under the trade names of "10X," "20X," "XXX," "XXX Extreme," "Requiem," "Crazy Clown" and "Sunburst," among others, throughout the United States.

22.     **JAMES JOHNSON** (sometimes referred to herein as "**JOHNSON**") was a salesperson who lived in Colorado; he sold and brokered the distribution of drugs, new drugs and controlled substances under the trade names of "10X," "20X," "XXX," "XXX Extreme," "Requiem," "Crazy Clown" and "Sunburst," among others, on behalf of **BOWEN**, **BERNIER**, **The Really Cool Stuff Company** and **Heart of Asia**.

23.     **DONALD CREAGER III** (sometimes referred to herein as "**CREAGER**") was an owner, principal, manager, agent and representative of **Creager Warehouse** who obtained "spice" from **JOHNSON**, **BOWEN** and **BERNIER**; he then marketed, sold and distributed drugs, new drugs and controlled substances under the trade names of "10X," "20X," "XXX," "XXX Extreme," "Crazy Clown," and "Requiem," among others, to retail stores throughout the Colorado region, including **ORLANDO MARTINEZ** and **O's Pipes and Tobacco**.

24.     **ORLANDO MARTINEZ** (sometimes referred to herein as "**MARTINEZ**") was doing business as **O's Pipes and Tobacco** and obtained "spice" from **CREAGER** and **Creager Warehouse**, which he then sold through his retail store under the trade names of "10X," "20X," "XXX," "XXX Extreme," "Requiem," and "Crazy Clown," among others, to people in the

Denver Metropolitan area.

25.     **KENNETH CHASTAIN** (sometimes referred to herein as "**CHASTAIN**") was

an agent and representative of **Avalon**, who obtained "spice" from **BOWEN** and **BERNIER**,

which he then sold through his retail store under the trade name of "Sunburst," among others, to

people in Wisconsin.

26.     **ALTAF HUSSAIN DANDIA,** also known as **"Dandy"** (sometimes referred to

herein as "**DANDIA**") was the President, agent and representative of **Main Stop**, and obtained

"spice" from Heart of Asia, **BOWEN** and **BERNIER**, which he then sold through his retail store

under the trade name of "Sunburst," among others, to people in Illinois.

27.     **PETER KARFIAS** (sometimes referred to herein as "**KARFIAS**") was an agent

and representative of **Tobacco Hut**, who obtained "spice" from Heart of Asia, **BOWEN** and

**BERNIER**, which he then sold through the retail store under the trade name of "Sunburst,"

among others, to people in Nebraska.

28.     **STEPHANIE CHRISTENSEN** (sometimes referred to herein as

"CHRISTENSEN") was an agent and representative of **Tobacco Hut**, who obtained "spice"

from Heart of Asia, **BOWEN** and  **BERNIER**, which she then sold through the retail store under

the trade name of "Sunburst," among others, to people in Nebraska.

## COUNT ONE
### Conspiracy to Defraud the United States and Violate the Controlled Substances Act
### (18 U.S.C. § 371)

### THE CONSPIRACY

29.     The allegations in paragraphs 1-28 are incorporated by reference as if fully

rewritten herein.

30.     In or about January 2012 and continuing until in or about May 2014, within the State and District of Colorado and elsewhere, the defendants,

**1.  JOHN BOWEN,**
**2.  DANIEL BERNIER,**
**3.  JAMES JOHNSON,**
**4.  DONALD CREAGER III,**
**5.  ORLANDO MARTINEZ,**
**6.  KENNETH CHASTAIN,**
**7.  ALTAF HUSSAIN DANDIA aka "Dandy",**
**8.  PETER KARFIAS, and**
**9.  STEPHANIE CHRISTENSEN,**

did knowingly conspire, confederate, and agree with each other and others known and unknown to the Grand Jury (1) to defraud the United States Drug Enforcement Administration (DEA), an agency of the United States, for the purpose of impeding, impairing, obstructing, and defeating their lawful governmental functions of regulating controlled substances; (2) to defraud the United States Food and Drug Administration (FDA), an agency of the United States, for the purpose of impeding, impairing, obstructing, and defeating their lawful governmental functions of regulating drug labeling and approving new drugs, before introduction into interstate commerce; and (2) to commit certain offenses against the United States, that is, to violate Title 21, United States Code, Sections 841(a)(1) and (b)(1) by knowingly and intentionally possessing with the intent to distribute, dispensing and distributing controlled substances, to wit AB-Fubinaca, in violation of the Controlled Substances Act.

## MANNER AND MEANS

31.     As part of the conspiracy, the defendants, aiding and abetting each other, possessed, packaged, labeled, marketed, distributed and sold substances containing ADB-Pinaca and AB-Fubinaca in Colorado and throughout the United States.

32.     As part of the conspiracy, the defendants, aiding and abetting each other, manufactured, labeled and distributed the "10X," "20X," "XXX," "XXX Extreme," "Requiem," "Crazy Clown," and "Sunburst", among others, (1) to avoid DEA regulation as "controlled

substances"; and (2) to avoid FDA regulation as "new drugs", including approving the labeling of "new drugs" by (a) falsely labeling their products as "not for human consumption" and (b) omitting adequate instructions for the use of their products for their actual intended use of "getting high".

33. As part of the conspiracy, **JOHN BOWEN** created, controlled and used **The Really Cool Stuff Company** and **Heart of Asia**, businesses that supplied synthetic cannabinoids, "Spice", drugs, new drugs and controlled substances to companies and businesses throughout the United States.

34. As part of the conspiracy, **JOHN BOWEN** opened accounts at various financial institutions like JP Morgan Chase in his name and in the names of business entities in order to receive checks and monies derived from the scheme.

35. As part of the conspiracy, **JOHN BOWEN** used accounts at various financial institutions in the United States to electronically transfer and wire funds to individuals and entities in China for ingredients he and his co-conspirators used to manufacture synthetic cannabinoids, "Spice", drugs, new drugs and controlled substances.

36. As part of the conspiracy, **DANIEL BERNIER** produced and packaged the synthetic cannabinoids, "Spice", drugs, new drugs and controlled substances in packaging that falsely represented the contents were "not for human consumption."

37. As part of the conspiracy, **DANIEL BERNIER** sent the synthetic cannabinoids, "Spice", drugs, new drugs and controlled substances in interstate commerce via Federal Express and other common carrier to wholesalers throughout the United States, including **DONALD CREAGER III** and **Creager Warehouse** in Colorado, for further distribution to retailers like

**ORLANDO MARTINEZ** at **O's Pipes and Tobacco**, for further distribution to consumers in Colorado.

38.     As part of the conspiracy, **DANIEL BERNIER** sent the synthetic cannabinoids, "Spice", drugs, new drugs and controlled substances in interstate commerce via Federal Express and other common carrier to retailers throughout the United States, including **KENNETH CHASTAIN** and **Avalon** in Wisconsin; **ALTAF HUSSAIN DANDIA aka "Dandy"** and **Main Stop** in Illinois; **PETER KARFIAS** and **Tobacco Hut** in Nebraska; and, **STEPHANIE CHRISTENSEN** and **Tobacco Hut** in Nebraska, for further distribution and sale to consumers in their respective states.

39.     As part of the conspiracy, **JOHN BOWEN** and **DANIEL BERNIER** deposited checks and payments into accounts held in various financial institutions, which funds were then invested in supplies, assets and ventures.

40.     As part of the conspiracy, **JAMES JOHNSON** was a salesperson who interacted with potential customers to sell the synthetic cannabinoids, "Spice", drugs, new drugs and controlled substances.

41.     As part of the conspiracy, **JOHN BOWEN** and **DANIEL BERNIER** paid **JAMES JOHNSON** for sales in which **JOHNSON** was involved.

42.     As part of the conspiracy, **JAMES JOHNSON** deposited cash and payments into a safe deposit box in Colorado.

## <u>OVERT ACTS</u>

43.     To effect the object of the conspiracy, the defendants and other co-conspirators

performed overt acts in the State and District of Colorado and elsewhere, including but not limited to the following acts:

a. In or about the fall 2011, CREAGER, through his agents, representatives and business entities, sold spice in the Colorado area.

b. In or about March 2012, BOWEN sent an international wire transfer to a Chinese bank account in an amount of $4150.00.

c. On or about April 9, 2012, BOWEN sent an international wire transfer to a Chinese bank account in an amount of $6600.00.

d. On or about April 18, BOWEN sent an international wire transfer to a Chinese bank account in an amount of $8700.00.

e. On or about June 6, 2012, BOWEN sent an international wire transfer to a Chinese bank account in an amount of $8000.00.

f. On or about June 29, 2012, BOWEN sent an international wire transfer to a Chinese bank account in an amount of $2900.00.

g. On or about July 3, 2012, BOWEN sent an international wire transfer to a Chinese bank account in an amount of $3600.00.

h. On or about September 18, 2012, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $6500.00.

i. On or about September 20, 2012, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $10,000.00.

11

j.  On or about October 5, 2012, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $14,400.00.

k.  On or about October 9, 2012, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $9200.00.

l.  On or about October 22, 2012, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $8400.00.

m.  On or about October 29, 2012, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $8400.00.

n.  On or about December 12, 2012, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $3300.00.

o.  On or about December 31, 2012, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $7700.00.

p.  On or about January 11, 2013, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $6600.00.

q.  On or about January 22, 2013, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire

transfer to a Chinese bank account in an amount of $6600.00.

r.   On or about February 4, 2013, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $11000.00.

s.   On or about February 15, 2013, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $13200.00.

t.   On or about March 11, 2013, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $4000.00.

u.   On or about April 1, 2013, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $7750.00.

v.   On or about April 5, 2013, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $9300.00.

w.   On or about April 12, 2013, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $15500.00.

x.   On or about April 23, 2013, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $12400.00.

y.   On or about June 21, 2013, BOWEN and BERNIER, aiding and abetting each other,

using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $10200.00.

z.  On or about July 16, 2013, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $10200.00.

aa. On or about July 23, 2013, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $12000.00.

bb. On or about August 6, 2013, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $15300.00.

cc. On or about August 6, 2013, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $2222.00.

dd. On or about August 16, 2013, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $5000.00.

ee. On or about August 19, 2013, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $6800.00.

ff. On or about August 20, 2013, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $5200.00.

gg. On or about September 10, 2013, BOWEN and BERNIER, aiding and abetting each other, using an account for the Really Cool Stuff Company, sent an international wire transfer to a Chinese bank account in an amount of $2290.00.

hh. On or about October 16, 2013, BERNIER sent a federal express package from Heart of Asia to Creager Mercantile.

ii.  On or about October 17, 2013, BERNIER sent a federal express package from Heart of Asia to Creager Mercantile.

jj.  On or about October 19, 2013, BERNIER sent a federal express package from Heart of Asia to Creager Mercantile.

kk. On or about November 14, 2013 BOWEN and JOHNSON met with a spice customer at a restaurant in Castle Rock, Colorado to consummate a sale of "Sunburst."

ll.  On or about November 14, 2013 BOWEN and JOHNSON received $5000.00 for 3150 packets of "Sunburst."

mm.    In or about November, BERNIER sent a Federal Express shipment from Florida to Colorado that contained Sunburst, a synthetic cannabinoid and new drug; the label indicated it was shipped from Heart of Asia at 4355 Dow Road, Melbourne, FL 32934.

nn. As a result of the meeting on November 14 with BOWEN and JOHNSON, BERNIER sent a second Federal Express shipment from Florida to a location in Colorado; the second shipment, similar to the first shipment, contained synthetic cannabinoid labeled "Sunburst" and "not for human consumption"; the shipping label indicating it had been shipped from Heart of Asia at 4355 Dow Road, Melbourne, FL 32924.

oo. On or about November 19, 2013 Johnson texted a customer, stating that "most of the

15

shipment was there with the balance tomorrow".

pp. Thereafter, around November 19, 2013 JOHNSON sent a text message to his customer stating that they would "meet tomorrow".

qq. On or about November 20, 2013 JOHNSON and BOWEN met a customer in Castle Rock, Colorado to discuss the "Sunburst" transaction.

rr. On or about November 20, BERNIER sent a Federal Express shipment from Florida to a location in Colorado; the federal express package contained the synthetic cannabinoid and new drug labeled "Sunburst" and "Not for Human Consumption." the package shipping label indicated it was from Heart of Asia at 4355 Dow Road, Melbourne, FL 32934.

ss. On or about November 20, 2013 JOHNSON and BOWEN received another order for Sunburst from a customer.

tt. As a result of this order, on or about November 29, BERNIER sent a package via federal express from Florida to a location in Colorado; the federal express package contained the synthetic cannabinoid and new drug labeled "Sunburst" and "Not for Human Consumption." the package shipping label indicated it was from Heart of Asia at 4355 Dow Road, Melbourne, FL 32934.

uu. On or about December 5, 2013, BOWEN and BERNIER, aiding and abetting each other, using an account for Heart of Asia, sent an international wire transfer to a Chinese bank account in an amount of $3600.00.

vv. On or about December 11, 2013, CHRISTENSEN signed a check from FKR LLC to Heart of Asia in the amount of $1250.00.

ww.    On or about December 18, 2013, CHRISTENSEN signed a check from FKR LLC

16

to Heart of Asia in the amount of $775.00.

xx. On or about December 19, 2013, CHRISTENSEN signed a check from FKR LLC to Heart of Asia in the amount of $750.00.

yy. On or about December 24, 2013, CHRISTENSEN signed a check from FKR LLC to Heart of Asia in the amount of $1530.00.

zz. On or about January 29, 2014 JOHNSON met a customer at a grocery store parking in Castle Rock, Colorado.

aaa.    On or about January 29, 2014, JOHNSON received a $3000.00 payment from a customer for synthetic cannabinoids.

bbb.    On or about January 29, 2014, BOWEN accessed his telephone and received a text message from a customer regarding the new liquefied synthetic cannabinoid BOWEN and BERNIER were developing ("Vaps"), as follows: "met with James, just paid $3,000, collected vape samples, great idea, need more samples."

ccc.    At the meeting on January 29, 2014 JOHNSON cautioned his customer to tell his customers not to take a big hit when they try the new product because they didn't know how strong it was.

ddd.    Subsequent to that meeting on January 29, 2014 BERNIER sent a small cardboard box to JOHNSON, who in turn delivered it to the customer; the box contained "Vaps"; the substance contained liquid AB-Fubinaca, which was a controlled substance in Colorado, and a new drug in violation of the FDCA.

eee.    On or about January 29, 2014, BERNIER sent a federal express package from Heart of Asia to Main Stop.

fff. On or about January 29, 2014, Main Stop, through its agents, sent a federal express

17

package to Heart of Asia.

ggg.   On or about February 5, 2014, BERNIER sent a federal express package from Heart of Asia to Avalon.

hhh.   On or about February 5, 2014, a representative of Avalon sent a federal express package to Heart of Asia.

iii. On or about February 10, 2014, BERNIER sent a federal express package from Heart of Asia to Tobacco Hut.

jjj. On or about February 10, 2014, a representative of Tobacco Hut sent a federal express package to Heart of Asia.

kkk.   On or about February 13, 2014 BOWEN and BERNIER used telephones to inform their customer that a box of synthetic cannabinoids that contained 1000 packages Sunburst had been sent in November 2013; the federal express package contained the synthetic cannabinoid and new drug labeled "Sunburst" and "Not for Human Consumption." the package shipping label indicated it was from Heart of Asia at 4355 Dow Road, Melbourne, FL 32934.

lll. On February 10, 2014, BOWEN and JOHNSON accessed telephones to receive another order of Sunburst from a customer.

mmm. On or about February 10, 2014, BERNIER shipped Sunburst via Federal Express from Florida to Colorado; the federal express package contained the synthetic cannabinoid and new drug labeled "Sunburst" and "Not for Human Consumption"; the package shipping label indicated it was from Heart of Asia at 4355 Dow Road, Melbourne, FL 32934..

nnn.   On or about February 10, 2014 JOHNSON accessed a telephone to receive an

18

order for spice from a customer.

ooo.   As a result of that order, on or about February 14, BERNIER mailed a box via Federal Express to Colorado; the package contained e-cigarette cartridges that weighed approximately 2.27 kilograms of FUB-UR144 and AB-Fubinaca, controlled substances in the state of Colorado, and a new drug in violation of the FDCA; the shipping label indicated the cartridges were shipped by Heart of Asia.

ppp.   On or about February 20, 2014, BERNIER sent a federal express package from Heart of Asia to Main Stop.

qqq.   On or about February 14, 2014, a representative of Avalon sent a federal express package to Heart of Asia.

rrr. On or about February 18, 2014, CHRISTENSEN sent a text communication to JOHNSON indicating she needed the order, "over the weekend or wed of next week."

sss. On or about February 20, 2014, BERNIER sent a federal express package from Heart of Asia to Avalon.

ttt. On or about February 20, 2014, BERNIER sent a federal express package from Heart of Asia to Main Stop.

uuu.   On or about February 22, 2014, CHRISTENSEN sent a text communication to JOHNSON indicating she was, "expecting the delivery."

vvv.   On or about February 28, 2014, BOWEN and BERNIER, aiding and abetting each other, using an account for Heart of Asia, sent an international wire transfer to a Chinese bank account in an amount of $3000.00.

www.  On or about April 9, 2014 BOWEN and JOHNSON met a customer at a restaurant in Castle Rock, Colorado to discuss future purchases of new drugs.

19

xxx.    On or about April 21, 2014 BERNIER sent a shipment from Florida to Colorado; the box contained e-cigarettes type cartridges of synthetic cannabinoids; the shipping label indicated the package had been shipped from Heart of Asia at 4355 Dow Road, Melbourne, FL 32934.

All in violation of Title 18, United States Code, Section 371 and Title 21, United States Code, Sections 331(d), 355 and 841(a).

### COUNT TWO
**False Statements**
**(18 U.S.C. § 1001(a)(2))**

44.    The allegations in paragraphs 1-28 are incorporated by reference as if fully rewritten herein.

45.    In or about July 2011, in the District of Colorado and elsewhere, in a matter within the jurisdiction of the executive branch of the government of the United States,

### 4. DONALD CREAGER III,

knowingly and willfully did make the below materially false statement to a representative of the Drug Enforcement Administration, when in truth, he knew the below described facts:

| FALSE STATEMENT | THE TRUTH IN FACT |
|---|---|
| CREAGER stopped selling "spice" products at Creager Warehouse. | CREAGER continued selling "spice" products at Creager Warehouse. |

In violation of Title 18, United States Code, Section 1001(a)(2).

### COUNT THREE
**21 U.S.C. § 841(a)(1) and (b)(1)(C)**
**(Distribution and Possession with the Intent to Distribute a Controlled Substance)**
**18 U.S.C. § 2**
**(Aiding and Abetting)**

46.    On or about February 14, 2014, within the State and District of Colorado and

20

elsewhere, the defendants,

**1.  JOHN BOWEN,**
**2.  DANIEL BERNIER, and**
**3.  JAMES JOHNSON,**

aiding and abetting each other, knowingly and intentionally distributed and possessed with intent to distribute approximately 4.8 kilograms of a mixture or substance containing a detectable amount of AB-Fubinaca, a Schedule I controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C); and Title 18, United States Code, Section 2.

## COUNT FOUR
### 21 U.S.C. § 841(a)(1) and (b)(1)(C)
**(Distribution and Possession with the Intent to Distribute a Controlled Substance)**
### 18 U.S.C. § 2
**(Aiding and Abetting)**

47.     On or about May 2, 2014, within the State and District of Colorado and elsewhere, the defendants,

**1.  JOHN BOWEN,**
**2.  DANIEL BERNIER, and**
**3.  JAMES JOHNSON,**

aiding and abetting each other, knowingly and intentionally distributed and possessed with intent to distribute a mixture or substance containing a detectable amount of AB-Fubinaca, a Schedule I controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C); and Title 18, United States Code, Section 2.

## COUNT FIVE
### 21 U.S.C. § 843(b)
**(Unlawful Use of Communications Facility)**

48.     On or about February 20, 2014, in the State and District of Colorado, the defendant,

**3.  JAMES JOHNSON,**

did knowingly use a communications facility, to wit: a telephone, while committing and

facilitating the commission of the offense of distribution of a mixture or substance containing a

detectable amount of AB-Fubinaca, said telephone call designated number 50 by Agents of the

Drug Enforcement Administration.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT SIX
### 21 U.S.C. § 843(b)
### (Unlawful Use of Communications Facility)

49.     On or about April 30, 2014, in the State and District of Colorado, the defendant,

### 3.  JAMES JOHNSON,

did knowingly use a communications facility, to wit: a telephone, while committing and

facilitating the commission of the offense of distribution of a mixture or substance containing a

detectable amount of AB-Fubinaca.

All in violation of Title 21, United States Code, Section 843(b).

## COUNT SEVEN through TWENTY-EIGHT
### Money Laundering Greater than $10,000
### (18 U.S.C. §1957 and 2)

50.     The Grand Jury realleges and incorporates the paragraphs 1-28 of this Indictment

as if fully set forth herein.

51.     On or about the following dates, in the District of Colorado and elsewhere, the

Defendants,

### 1.  JOHN BOWEN,
### 2.  DANIEL BERNIER,

aided and abetted by each other and others known and unknown, knowingly engaged in a

monetary transaction of criminally derived property of a value greater than $10,000, described

below, which had been derived from specified unlawful activity in and affecting interstate commerce, that is, specified unlawful activities described as conspiracy to facilitate the sale of merchandise after importation knowing it was brought into the United States contrary to law (in violation of the FDCA), namely violations of Title 18, United States Code §§ 371 and 545.

| Count | Date | Monetary Transaction | From | To | Amount |
|-------|------|----------------------|------|-----|--------|
| 7 | 5/8/13 | Internet/On Line Transfer | Really Cool Stuff LLC Acct.#165925760 | Bowen and Bernier Investments LLC Acct.#466211237 | $11000.00 |
| 8 | 5/16/13 | Internet/On Line Transfer | Really Cool Stuff LLC Acct.#165925760 | Bowen and Bernier Investments LLC Acct.#466211237 | $11500.00 |
| 9 | 7/31/13 | Internet/On Line Transfer | Really Cool Stuff LLC Acct.#165925760 | Bowen and Bernier Investments LLC Acct.#466211237 | $14000.00 |
| 10 | 8/27/13 | Internet/On Line Transfer | Really Cool Stuff LLC Acct.#165925760 | Bowen and Bernier Investments LLC d/b/a Dan's Classic Car Club Acct.#256391295 | $10300.00 |
| 11 | 5/21/12 | Internet/On Line Transfer | Bowen and Bernier Investments LLC d/b/a Great American Herbal Acct.#466207243 | Bowen and Bernier Investments LLC Acct.#466211237 | $12500.00 |
| 12 | 5/25/12 | Internet/On Line Transfer | Bowen and Bernier Investments LLC d/b/a Great American Herbal Acct.#466207243 | Bowen and Bernier Investments LLC Acct.#466211237 | $11000.00 |
| 13 | 6/27/12 | Internet/On Line Transfer | Bowen and Bernier Investments LLC d/b/a Great American Herbal Acct.#466207243 | Bowen and Bernier Investments LLC Acct.#466211237 | $20000.00 |

| 14 | 7/11/12 | Internet/On Line Transfer | Bowen and Bernier Investments LLC d/b/a Great American Herbal Acct.#466207243 | Bowen and Bernier Investments LLC Acct.#466211237 | $20000.00 |
| 15 | 7/13/12 | Internet/On Line Transfer | Bowen and Bernier Investments LLC d/b/a Great American Herbal Acct.#466207243 | Bowen and Bernier Investments LLC Acct.#466211237 | $12000.00 |
| 16 | 7/18/12 | Internet/On Line Transfer | Bowen and Bernier Investments LLC d/b/a Great American Herbal Acct.#466207243 | Bowen and Bernier Investments LLC Acct.#466211237 | $20000.00 |
| 17 | 7/27/12 | Internet/On Line Transfer | Bowen and Bernier Investments LLC d/b/a Great American Herbal Acct.#466207243 | Bowen and Bernier Investments LLC Acct.#466211237 | $25000.00 |
| 18 | 8/27/12 | Internet/On Line Transfer | Bowen and Bernier Investments LLC d/b/a Great American Herbal Acct.#466207243 | Bowen and Bernier Investments LLC Acct.#466211237 | $20000.00 |
| 19 | 9/18/12 | Internet/On Line Transfer | Bowen and Bernier Investments LLC d/b/a Great American Herbal Acct.#466207243 | Bowen and Bernier Investments LLC Acct.#466211237 | $25000.00 |
| 20 | 8/3/12 | Wire Transfer | Bowen and Bernier Investments LLC d/b/a Great American Herbal Acct.#466207243 | Jeff Mac Investments | $11000.00 |
| 21 | 8/6/12 | Internet/On Line Transfer | Bowen and Bernier Investments LLC Acct.#466211237 | Bowen and Bernier Investments LLC d/b/a Great American Herbal Acct.#466207243 | $25000.00 |
| 22 | 6/28/12 | Wire Transfer | Bowen and Bernier Investments LLC Acct.#466211237 | Countywide Title & Escrow Corporation | $48951.97 |

24

| 23 | 7/27/12 | Wire Transfer | Bowen and Bernier Investments LLC Acct.#466211237 | Countywide Title & Escrow Corporation | $10950.00 |
| 24 | 7/30/12 | Wire Transfer | Bowen and Bernier Investments LLC Acct.#466211237 | Countywide Title & Escrow Corporation | $35289.32 |
| 25 | 8/29/12 | Wire Transfer | Bowen and Bernier Investments LLC Acct.#466211237 | Countywide Title & Escrow Corporation | $23650.85 |
| 26 | 9/26/12 | Wire Transfer | Bowen and Bernier Investments LLC Acct.#466211237 | Countywide Title & Escrow Corporation | $23279.75 |
| 27 | 6/18/12 | Wire Transfer | Bowen and Bernier Investments LLC Acct.#466211237 | Island Title Escrow Agency | $39314.72 |
| 28 | 7/12/12 | Wire Transfer | Bowen and Bernier Investments LLC Acct.#466211237 | Title Security Escrow of Central Florida Inc | $39047.97 |

All in violation of Title 18, United States Code Section 1957 and 2.

### COUNT TWENTY-NINE
### (Conspiracy to Commit Money Laundering)
### (18 U.S.C. §1956(h))

52.     The Grand Jury re-alleges and incorporates the paragraphs 1-28 of this Indictment as fully set forth herein.

53.     In or about February 2014, and continuing through and including in or about May 2014, in the State and District of Colorado, and elsewhere, defendants

### 1.  JOHN BOWEN,
### 2.  DANIEL BERNIER,
### 3.  JAMES JOHNSON,

conspired and agreed with each other and with persons known and unknown to the Grand Jury to commit the offenses of (1) conducting financial transactions involving the proceeds of specified unlawful activity, with the intent to promote the carrying on of specified unlawful activity in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), such specified unlawful activity is described as a conspiracy to facilitate the sale of merchandise after importation

25

knowing it was brought into the United States contrary to law (in violation of the FDCA), namely violations of Title 18, United States Code §§ 371 and 545; and (2) the engaging in monetary transactions in property derived from specified unlawful activity in violation of Title 18, United States Code, Section 1957(a), namely, such property being derived from a conspiracy to facilitate the sale of merchandise after importation knowing it was brought into the United States contrary to law (in violation of the FDCA), namely violations of Title 18, United States Code §§ 371 and 545.

All in violation of Title 18, United States Code, Sections 1956(h).

## NOTICE OF FORFEITURE

### Forfeiture Allegation

1.      The allegations contained in Counts One through Twenty-Nine of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 982(a)(1), and 21 U.S.C. § 853.

2.      Upon conviction of the violation alleged in Count One of this Indictment involving a violation of 18 U.S.C. § 371, and 21 U.S.C. §§ 841, 331(d), 355, a Conspiracy to Defraud the United States and Violate the Controlled Substances Act, defendants,

**JOHN BOWEN,**
**DANIEL BERNIER, and**
**JAMES JOHNSON,**

shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853 any and all of the defendants' right, title and interest in all property constituting and derived from any proceeds the defendants obtained directly and indirectly as a result of such offense, including, but not limited to:

A money judgment in the amount of proceeds obtained by the conspiracy and by the defendants, for which the defendants are joint and severally liable.

3.      Upon conviction of the violations alleged in Counts Three through Six of this Indictment involving violations of 21 U.S.C. § 841, 21 U.S.C. § 843 and 18 U.S.C. § 2 , defendants,

**JOHN BOWEN,**
**DANIEL BERNIER, and**
**JAMES JOHNSON,**

shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853 any and all of the defendants' right, title and interest in all property constituting and derived from any proceeds obtained directly and indirectly as a result of such offense, and in all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such offense, including, but not limited to:

> A money judgment in the amount of proceeds obtained by the conspiracy and by the defendants, for which the defendants are joint and severally liable.

4.      Upon conviction of the violations alleged in Counts Seven through Twenty-Nine of this Indictment involving violations of 18 U.S.C. § 1957,  18 U.S.C. § 2, and 18 U.S.C. § 1956(h), defendants,

**JOHN BOWEN,**
**DANIEL BERNIER, and**
**JAMES JOHNSON,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1) any and all of the defendants' right, title and interest in all property, real or personal, involved in such offense, or all property traceable to such property, including, but not limited to:

> A money judgment in the amount of proceeds obtained by the conspiracy and by the defendants, for which the defendants are joint and severally liable.

5.      If any of the property described above, as a result of any act or omission of the defendants:

> a)      cannot be located upon the exercise of due diligence;
> b)      has been transferred or sold to, or deposited with, a third party;
> c)      has been placed beyond the jurisdiction of the Court;
> d)      has been substantially diminished in value; or

      e)      has been commingled with other property which
                     cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code,

Section 2461(c), to seek forfeiture of any other property of said defendants up to the value of the

forfeitable property.

                    A TRUE BILL:


                    Ink signature on file in Clerk's Office
                    FOREPERSON

JOHN F. WALSH
United States Attorney

s/ Jaime A. Pena
By: Jaime A. Pena
Assistant U.S. Attorney
1225 Seventeenth Street, Suite 700
Denver, CO 80211
Telephone: 303-454-0100
Facsimile: 303-454-0402
Email: jaime.pena2@usdoj.gov
Attorney for the Government

s/ James Russell
By: James Russell
Assistant U.S. Attorney
U.S. Attorney's Office
1225 Seventeenth Street, Ste. 700
Denver, Colorado 80202
Telephone: (303) 454-0100
E-mail: James.Russell5@usdoj.gov
Attorney for the United States