IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 14-cr-00169-PAB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.    JOHN BOWEN,
2.    DANIEL BERNIER,
3.    JAMES JOHNSON,
4.    **DONALD CREAGER III,**
5.    **ORLANDO MARTINEZ,**
6.    KENNETH CHASTAN,
7.    ALTAF HUSSAIN DANDIA aka "Dandy",
8.    PETER KARFIAS, and
9.    STEPHANIE CHRISTENSEN,

       Defendants.

_____

**GOVERNMENT'S RESPONSE (1) TO DEFENDANT ORLANDO MARTINEZ'S MOTION FOR PRETRIAL DETERMINATION OF ALLEGED CO-CONSPIRATORS' STATEMENTS PURSUANT TO F.R.E. 801(d)(2)(E) AND A *JAMES* HEARING (Doc. #289) and (2) TO DEFENDANT DONALD CREAGER'S MOTION FOR *JAMES* HEARING (*IN LIMINE* DETERMINATION OF ADMISSIBILITY OF RULE 801(d)(2)(E) STATEMENTS) (Doc. #298)**

_____

The United States of America, by United States Attorney John F. Walsh, through Assistant United States Attorney Jaime Pena, hereby files this RESPONSE TO DEFENDANT ORLANDO MARTINEZ'S MOTION FOR PRETRIAL DETERMINATION OF ALLEGED CO-CONSPIRATORS' STATEMENTS PURSUANT TO F.R.E. 801(d)(2)(E) AND A *JAMES* HEARING (Doc. #289), and TO DEFENDANT CREAGER'S MOTION FOR *JAMES* HEARING (*IN LIMINE* DETERMINATION OF

ADMISSIBILITY OF RULE 801(d)(2)(E) STATEMENTS) (Doc. #298), and states as follows:

The United States, by United States Attorney John F. Walsh, through Assistant United States Attorney Jaime A. Pena submits this proffer pursuant to the Court's Scheduling Order issued herein. The Government herein states the nature of and existence of the conspiracies reflected in Count One of the Indictment, along with their respective statements which are proffered herein.  This proffer specifies the statements the Government intends to introduce in its case in chief, including the written statements and audio recordings reflected in the proffer.  All the written statements and audio recordings reflected as sources of statements have been previously disclosed to the defense.

I.    **Federal Rules and Case Law Concerning James Hearings and Proffers**

Under Tenth Circuit law, the district court may satisfy the prerequisites for admission of a co-conspirator statement through either of two means: by holding a *James* hearing or by provisionally admitting the statement with the caveat that ... the party offering [it] must prove the existence of the predicate conspiracy through trial testimony or other evidence.  *United States v. Owens*, 70 F.3d at 1118, 1123 (10th Cir. 1995).  In either situation, the court may consider the hearsay statement itself, as well as independent factors, in determining whether the government has established a conspiracy by a preponderance of the evidence. *See* Fed.R.Evid. 801(d)(2); *see also United States v. Bourjaily*, 483 U.S. 171, 181 (1987); and *see United States v. Gonzalez-Montoya*, 161 F.3d 643, 649 (10th Cir. 1998).  If it fails to hold a *James* hearing, the district court must at least make preliminary factual findings on the record regarding the admissibility of the statements. *See United States v. Perez*, 989 F.2d 1574, 1580 (10th Cir.1993) (*en banc*).[1]

---

[1] It is interesting to note that no other Circuit makes such requirements on its district courts.  In fact, the Fifth and Eleventh Circuits (birthplace of the *James* decision) have effectively abandoned pretrial determinations of

### A.     Proving The Existence of a Conspiracy

To satisfy the requirements for admission under Rule 801(d)(2)(E), there must be substantial evidence, including the hearsay statements themselves, that a combination or conspiracy existed.  *See United States v. Bucaro*, 801 F.2d 1230, 1232 (10th Cir. 1986); *United States v. Andrews*, 585 F.2d 961, 964 (10th Cir. 1978).  "Substantial evidence" does not mean direct evidence.  The combination or common plan may be inferred from circumstantial evidence.  *Bucaro*, 801 F.2d at 1232; *Andrews*, 585 F.2d at 964.

In *United States v. Petersen*, 611 F.2d at 1330 n. 1 (10th Cir. 1979), the Tenth Circuit defined the required evidentiary showing as more than a scintilla.  The court stated, "It is such evidence as a reasonable mind would accept as adequate to support a conclusion.  <u>Substantial evidence is less than the weight of the evidence</u>.  The possibility of drawing two inconsistent conclusions from the evidence . . . does not prevent the existence of the requisite elements from being supported by substantial evidence." *Id.; accord, Bucaro*, 801 F.2d at 1232.

Circumstantial evidence can be, and often is, the only form of proof of a co-conspirator's participation in a conspiracy or of the existence of the conspiracy itself.  The courts will sustain a conviction based solely on circumstantial evidence.  *King v. United States*, 402 F.2d 289, 292 (10th Cir. 1968); and *see Glasser v. United States*, 315 U.S. 60, 80 (1942). No formal or explicit agreement is necessary.  The government need only show concerted action --- a working together of two or more persons with a common design, purpose or understanding. *American Tobacco v. United States*, 328

---

admissibility and most district courts carry the defendant *James* Motion through trial. *United States v. Fragoso*, 978 F.2d 896, 899 (5th Cir. 1992) (*James* has never required a hearing outside the presence of the jury.); *United States v. Barshov*, 733 F.2d 842, 850 (11th Cir.1984) ( I]f the district court concludes that a *James* hearing is not reasonably practical, it can admit the statements subject to the government later connecting them up with sufficient evidence.); *United States v. Hines*, 717 F.2d 1481, 1488 (4th Cir.1983) (This court has held that a district court need not conduct a pre-trial *James* hearing to determine admissibility.); *United States v. Baltas*, 236 F.3d 27, 34-35 (1st Cir. 2001) (Noting that if the district court determines it is not reasonably practical to require a showing to be made before admitting the evidence, "[it] may admit the statement subject to being connected up. All in all, t]his is a matter committed to the broad discretion of the trial court.").

U.S. 781, 809-810 (1945); *United States v. Dumas*, 688 F.2d 84, 86 (10th Cir. 1982). Although "mere presence" by itself may not be sufficient to show membership in a conspiracy beyond a reasonable doubt, presence at the scene of a crime or close association with others involved in a criminal offense are factors that a jury and the Court may consider as circumstantial proof of membership. *United States v. Savaiano*, 843 F.2d 1280 (10th Cir.1988).

The Government, for purposes of this *James* Proffer, is <u>not</u> required to prove that the conspiracy was illegal or for unlawful purposes.  See *United States v. Martinez*, 825 F.2d 1451, 1452 (10th Cir. 1987).  As the Tenth Circuit explained in *Bucaro*, 801 F.2d at 1232 (quoting *Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 249 (1917)), "[i]t is not necessary . . . for the government to prove that the conspiracy was for unlawful purposes.  <u>The element of illegality may be shown by the [hearsay] declarations themselves</u>."  (Emphasis added.)

### B.     Connecting a Person To The Conspiracy

Once a combination of two or more persons is established, only light evidence is needed to connect a particular co-conspirator to the conspiracy.  See *Andrews*, 585 F.2d at 964.  *Accord, United States v. Dickey*, 736 F.2d 571, 583 (10th Cir. 1984) (only "slight evidence" is needed); *United States v. Moya-Gomez*, 860 F.2d 706, 758 (7th Cir. 1988); *United States v. Kennedy*, 564 F.2d 1329, 1342 (9th Cir. 1977); *United States v. Henderson*, 446 F.2d 960, 965 (8th Cir. 1971).

"[T]he jury may presume that a defendant is a knowing participant in the conspiracy when he acts in furtherance of the [conspiracy's] objective . . ." *United States v. Tranakos*, 911 F.2d 1422, 1430 (10th Cir. 1990); *Savaiano*, 843 F.2d at 1294 ("[p]articipation [in a conspiracy] may be inferred from the defendant's actions"). Allegations that the defendant played a "minor role" is not a defense. *Id.*

**C.     A Co-Conspirator Liability For Acts And Statements During The Conspiracy**

   **1.     *A Conspirator Is Accountable For All 801(d)(2)(E) Statements***

Once a defendant joins a conspiracy, earlier statements by his co-conspirators during the conspiracy -- even before he joined it -- are admissible against him. See *United States v. Brown*, 943 F.2d 1246, 1255 (10th Cir. 1991); *United States v. Rocha*, 916 F.2d 219, 239-40 (5th Cir. 1990); *United States v. Murphy*, 852 F.2d 1, 8 (1st Cir. 1988); *United States v. Jackson*, 757 F.2d 1486, 1490 (4th Cir. 1985); *United States v. Brown*, 755 F. Supp. 942, 946 (D. Colo. 1991), aff'd, 930 F.2d 35 (10th Cir. 1991).

   **2.     *A Defendant Is Held Accountable Even If He Did Not Know The Co-Conspirator/Declarant of the 801(d)(2)(E) Statement.***

The Government is not required to prove that a defendant knew the co-conspirator who made a 801(d)(2)(E) statement. A co-conspirator is not required to know all other members of the conspiracy scheme. *United States v. Roberts*, 14 F.3d 502, 511 (10th Cir. 1993). It is not necessary that all members of the conspiracy join it at the same time, and one may become a member of a conspiracy without full knowledge of the names, identities or locations of all of the other members. *Id*.

   **3.     *A Co-Conspirator Is Held Accountable Even If He Did Not Know Of Or Participate In All Means or Aspects of the Scheme***

The Government is not required to prove that an alleged co-conspirator agreed to, knew of or participated in every aspect, means or detail of the conspiracy. See *United States v. Tranakos*, 911 F.2d 1422, 1430 (10th Cir. 1990); *United States v. Pack*, 773 F.2d 261, 265-66 (10th Cir. 1985); *United States v. Massa*, 740 F.2d at 636; *United States v. Read*, 558 F.2d 1225, 1230 (7th Cir. 1981) (defendant "need not agree to or participate in every step of the conspiracy"); *Escalante*, 637 F.2d at 1200. A co-conspirator "[does not] have to participate in every facet of the conspiracy scheme."

*United States v. Noble*, 754 F.2d at 1329, *cf. United States v. Horton*, 847 F.2d 313, 319 (6th Cir. 1988).

### 4. *A Co-Conspirator Is Accountable For The Acts of His Co-Conspirators Before and After the Point Where He Joins the Conspiracy*

One who joins a conspiracy takes on the same level of culpability as an originator of the conspiracy. *Lowther v. United States*, 455 F.2d 657, 665 (10th Cir. 1972). A joiner need not know all the details of the scheme or the identities of his co-conspirators. *United States v. Sampol*, 636 F.2d 621, 676 (D.C. Cir. 1980).

A joiner is held to account for all of the statements and acts done by any other co-conspirator at any time, at least up until the point where the joiner abandons the conspiracy. *United States v. Overshon*, 494 F.2d 894, 896 (8th Cir. 1974). The defendant bears the burden of showing withdrawal from a conspiracy once it has been shown that she participated in it. *See United States v. Fox*, 902 F.2d 1508 (10th Cir. 1990). The defendant must show that he "took affirmative action to defeat or disavow the purpose of the conspiracy." *United States v. Garrett*, 720 F.2d 705, 714 (D.C. Cir. 1983); *See United States v. Gypsum Co.*, 438 U.S. 422, 464 (1978). The mere arrest of one or more co-conspirators does not terminate the conspiracy. *United States v. Thompson*, 533 F.2d 1006, 1010 (6th Cir.1976).

In a conspiracy, each member is criminally liable for all the reasonably foreseeable crimes committed during the course of and in furtherance of the conspiracy. *Pinkerton v. United States*, 328 U.S. 640 (1940); *see United States v. Galiffa*, 734 F.2d 306, 315 n.11 (7th Cir.1984) (Defendant complained unsuccessfully about being found guilty under *Pinkerton* and complicity theories of possession of marijuana with intent to distribute where evidence showed presence of defendant in vehicle used to transport marijuana, personal acquaintance with other members of the drug distribution ring, the

presence of money found after arrest of the parties, the presence of large quantities of marijuana, and that the vehicle was rented in his name although he was merely a passenger at the time of arrest; Court held the evidence was "more than sufficient").

### D. Determining Whether A Statement Is In Furtherance Of A Conspiracy

Prior to a statement being admitted under the co-conspirator exception to the hearsay rule, there must be some evidence showing that the statements were made "in furtherance" of the conspiracy. In determining what might constitute a statement "in furtherance" of the conspiracy, the courts have consistently held that the statement need not actually advance the conspiracy but need only promote its objectives. *United States v. Clark,* 18 F.3d 1337 (6th Cir. 1994). The court must examine the nature of the statement and the circumstances under which the statement was made. *United States v. Mayberry*, 896 F.2d 1117 (8th Cir. 1990); *United States v. Lewis,* 759 F.2d 1316 (8th Cir. 1985).

Specifically, the Tenth Circuit in *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993), stated:

> When inquiring whether a statement was made in furtherance of a conspiracy, we do not focus on its actual effect in advancing the goals of the conspiracy but on the declarant intent in making the statement. No talismanic formula exists for ascertaining whether a particular statement was intended by the declarant to further the conspiracy and is therefore admissible in accordance with the agency theory of conspiracy. To the contrary, this determination must be made by examining the context in which the challenged statement was made.

#### 1. *A Statement Does Not Need To Be Between Co-Conspirators To Be In Furtherance of the Conspiracy*

The proffered statement <u>may but need not be</u> one made by one conspirator to another. In *United States v. Williamson*, 53 F.3d 1500 (10th Cir. 1995), the statements

were admissible when made <u>by</u> a member of the conspiracy and it was irrelevant whether the statement was made <u>to</u> a member of the conspiracy. For example, a statement made by a co-conspirator to a Government agent where the motive for making this statement was to further the conspiracy is admissible under Rule 802(d)(2)(E).  *Williamson*, 53 F.3d at 1519; *United States v. Harris*, 944 F.2d 787 (10th Cir. 1991).

### 2. *Types of Statements that are in furtherance of a Conspiracy*

In determining whether a statement is in furtherance of a conspiracy, a statement may be admissible, even if it is subject to an alternative interpretation, if a reasonable interpretation of the statement would be consistent with an intent to promote the conspiratorial objectives.  *United States v. Marin*, 7 F.3d 679 (7th Cir. 1993); *United States v. Tarantino*, 846 F.2d 1384 (D.C. Cir. 1988).

A statement clearly may be admissible when made in response to questions. *United States v. Rastelli*, 870 F.2d 822 (2nd Cir. 1989); *United States v. Rahme*, 813 F.2d 31 (2nd Cir. 1987).

Similarly, a co-conspirator statement may also be admissible where it is characterized as "puffing," *United States v. Krevsky*, 741 F.2d 1090 (8th Cir. 1984), or "boasting," *United States v. Johnson*, 880 F.2d 413 (5th Cir. 1989); *United States v. Santiago*, 837 F.2d 1545 (11th Cir. 1988), if such "puffing" or "boasting" is used to facilitate the objectives of the conspiracy.

Finally, a co-conspirator statement is admissible even in situations where the declarant is uncharged, *United States v. Davis*, 766 F.2d 1452 (10th Cir. 1985); *United States v. Manaman*, 606 F.2d 919 (1979), and need not have been made in the presence of the defendant against whom it is being offered.  *United States v. Cotton*, 646 F.2d 430 (10th Cir. 1981).

The following is an illustrative, but by no means exhaustive, list of those purposes for which appellate courts have held co-conspirators statements to be "in furtherance" of the conspiracy:

1. Statements that, in any way, promote the objectives of the conspiracy. *United States v. Peveto*, 881 F.2d 844 (10th Cir. 1989).

2. Statements that facilitate drug transactions. *United States v. Christian*, 786 F.2d 203 (6th Cir. 1986).

3. Statements that outline the general history of the drug conspiracy. *United States v. Stratton*, 779 F.2d 820 (2nd Cir. 1985).

4. Statements that are intended to recruit potential co-conspirators or to otherwise induce the assistance of others in carrying out the objectives of the conspiracy. *Lujan*, 936 F.2d 406 (9th Cir. 1991). *United States v. Herrero*, 893 F.2d 1512 (7th Cir. 1990); *United States v. Jerkins*, 871 F.2d 598 (6th Cir. 1989); *United States v. Echeverry*, 759 F.2d 1451 (9th Cir. 1985); *United States v. Heinemann*, 801 F.2d 86 (2nd Cir. 1986).

5. Statements that identify a co-conspirator, the role of that co-conspirator or the source of drugs in a drug conspiracy. *Williamson*, 53 F.3d 1500; *United States v. Thompson*, 976 F.2d 666 (11th Cir. 1992); *United States v. Johnson*, 925 F.2d 1115 (8th Cir. 1991); *United States v. Smith*, 909 F.2d 1164 (8th Cir. 1990); *United States v. Mcgee*, 821 F.2d 234 (5th Cir. 1987); *Clark*, 18 F.3d 1337; *Cox*, 923 F.2d 519; *Peveto*, 881 F.2d 844; *United States v. Meeks*, 857 F.2d 1201 (8th Cir. 1988); *Mayberry*, 896 F.2d 1117; *Rahme*, 813 F.2d 31; United States v. Gomez, 810 F.2d 947 (10th Cir. 1987); *Herrero*, 893 F.2d 1512.

6. Statements that explain important events in the conspiracy. *United States v. Massa*, 740 F.2d 629 (8th Cir. 1984).

7. Statements designed to give directions to facilitate the objectives of the conspiracy. *Massa*, 740 F.2d 629.

8. Statements designed to advise co-conspirators of the progress of the conspiracy and keep them abreast of conspiratorial activities. *United States v. Smith*, 833 F.2d 213 (10th Cir. 1987); *United States v. Gibbs*, 739 F.2d 838 (3rd Cir. 1984); *United States v. Simmons*, 923 F.2d 934 (2nd Cir. 1991); *United States v. Heinemann, supra*.

9. Statements intended to assure the listener of a conspirator ability to consummate a particular transaction. *Echeverry*, 759 F.2d 541.

10. Statements intended to control damage to the conspiracy. *United States v. Van Daal Wyk*, 840 F.2d 494 (7th Cir. 1988); *United States v. Doerr*, 886 F.2d 944 (7th Cir. 1989).

11. Statements that prompt the listener to respond in a way that facilitates carrying out the activities of the conspiracy. *Rahme,* 813 F.2d 31.

12. Statements to conceal the objective of the conspiracy. *Doerr*, 886 F.2d 944.

13. Statements intended to enhance a co-conspirator usefulness to the conspiracy. *Tarantino,* 846 F.2d 1384.

14. Statements designed to gain the trust of co-conspirators or potential co-conspirators, to reassure trustworthiness, or to allay suspicions or fears. *Williamson*, 53 F.3d 1500; *United States v. McLernon*, 746 F.2d 1098 (6th Cir. 1984); *United States v. Posner*, 764 F.2d 1535 (11th Cir. 1985); *United States v. Mealy*, 851 F.2d 890 (7th Cir. 1988); *Gomez*, 810 F.2d 947.

15. Statements to new or prospective members of a conspiracy that explain the conspiracy. *United States v. Monroe,* 866 F.2d 1357 (11th Cir. 1989); *United States v. Turner,* 871 F.2d 1574 (11th Cir. 1989).

16. Statements that set in motion acts which are an integral part of the conspiracy. *United States v. Paris*, 827 F.2d 395 (9th Cir. 1987).

17. Statements that reveal the existence of a conspiracy. *Mayberry,* 896 F.2d 1117; *United States v. Garcia*, 994 F.2d 1499 (10th Cir. 1993); *United States v. Caliendo*, 910 F.2d 429 (7th Cir. 1990).

18. Statements in a drug conspiracy that detail such things as price, method of payment, delivery amounts, or the like. *United States v. Robinson,* 956 F.2d 1388 (7th Cir. 1992); *Cox,* 923 F.2d 519.

19. Statements that indicate payments made or demands for payment to accomplish activities of the conspiracy. *United States v. Esacove*, 943 F.2d 3 (5th Cir. 1993).

20. **Statements concerning the collection of drug debts. This could include threats to kill any person owing money in a drug conspiracy.** *Meeks,* 857 F.2d 1201.

21. **Statements to co-conspirators or potential co-conspirators indicating potential investigation, apprehension or punishment. These statements could include concerns about informants, threats or physical action taken against persons who would cooperate with law enforcement authorities.** *Simmons*, 923 F.2d 934; *United States v. Arias-Villanueva*, 998 F.2d 1491 (9th Cir. 1993); *United States v. McNeese,* 901 F.2d 585 (7th Cir. 1990); *United States v. Triplett*, 922 F.2d 1174 (5th Cir. 1991).

### E.     The Order Of Proof

The Federal Rules of Evidence changed the long-standing common law practices concerning the admission of co-conspirator statements. The determination of the admissibility of out-of-court declarations pursuant to Federal Rules of Evidence 801(d)(2), 803, or 804(b)(3) is a question for the trial court to decide. *United States v. Jackson*, 627 F.2d 1198, 1218 (D.C. Cir. 1980). *See United States v. Lippner*, 676 F.2d 456, 463-464 (11th Cir. 1982). *See also Bourjaily, supra*.

The admissibility of co-conspirator hearsay is governed by Federal Rule of Evidence 104(a):

> Preliminary questions concerning the . . . admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination, [the court] is not bound by the rules of evidence except those with respect to privileges.

Rule 1101(d)(1) provides in similar fashion that the rules of evidence "do not apply" to "[t]he determination of questions of fact preliminary to admissibility of evidence." Accordingly, the Government, in "proving up" co-conspirator statements, and the Court, in making its admissibility determinations, are not bound by the rules of evidence, except concerning privileges.

The "preferred order" of proof for the admission of out-of-court statements through application of Rule 801(d)(2)(E) permits connecting up strategies, proffers, pretrial hearings or any reasonable combination of approaches.

## II.    THE FACTUAL BACKGROUND OF THE CASE

**The Conspiracy to Defraud the United States and Violate the Controlled Substances Act**

### 1.    *Duration of, Members of, and Type of Conspiracy*

#### a.    Duration of the Respective Conspiracy

The evidence in this case will demonstrate that the conspiracies described in Counts One began on or about the dates stated in the Indictment.

#### b.    Members of the Conspiracy

The Government will show that the members of the conspiracy in Count One were JOHN BOWEN, DANIEL BERNIER, JAMES JOHNSON, DONALD CREAGER III, ORLANDO MARTINEZ, KENNETH CHASTAN, ALTAF HUSSAIN DANDIA aka "Dandy", PETER KARFIAS, and STEPHANIE CHRISTENSEN, along with other known and unknown co-conspirators such as chemical suppliers from China and other retailers throughout the United States.

The proof at trial and this *James* proffer will show that each member played a specific role in the overall conspiracy. The Indicted members and their respective roles are set forth below. The Government also will show that many other individuals, who were not named in the indictment, joined the conspiracy.

#### c.    Type of Conspiracy

The conspiratorial organization, as is the case with most drug conspiracies, can be categorized primarily as a hub and spokes conspiracy, although it also has

characteristics of a vertical organization. This conspiracy may be described as fluid with characteristics of both. *See Blumenthal v. United States*, 332 U.S. 539, 556 (1947) (conspiracies are not born full grown but rather evolve over time.)

### F. Evidence Supporting the Conspiracy

#### 1. *Categories of Evidence*

The evidence supporting the conspiracy will come from the following category of sources: (1) testimonial and other evidence presented by cooperating witnesses; (2) evidence derived from searches and Grand Jury Subpoenas; (3) evidence derived from interviews and post-arrest statements; and (4) wiretap evidence.

Set forth below is the government attempt to succinctly summarize the vast quantities of proof in this case. As stated above, this proffer is not meant to be, nor is it, a complete recounting of all the government proof.

## II. PROFFER UNDER FED. R. EVID. 801(d)(2) AND OBJECTIONS AS TO COUNT ONE
(Conspiracy to Defraud the United States and Violate the Controlled Substances Act)

### A. Section 1: Government's Initial Proffer as to Conspiracy

In or around 2010, BOWEN and BERNIER met through an internet solicitation and began selling synthetic cannabinoids from California. In late 2011 and early 2012 BOWEN and BERNIER transitioned from Los Angeles to Las Vegas and changed their operations from an internet-based business to a retail-based business distributing synthetic cannabinoids throughout the United States. In the Spring of 2012, BOWEN and BERNIER entered into an agreement with JOHNSON wherein JOHNSON would seek and provide retailers and wholesalers throughout the United States to create a distribution chain for the synthetic cannabinoids BOWEN and BERNIER were

manufacturing with chemicals and packaging from China, new drugs that were not approved and whose labeling was not approved by the FDA. Together, they formed a "hub and spoke" conspiracy where BOWEN, JOHNSON and BERNIER were the hub of the conspiracy and the wholesalers (CREAGER) and retailers (MARTINEZ, CHASTAIN, DANDIA, KARFIAS, and CHRISTENSEN), through the various business entities, were the spokes that ultimately led to the end consumer. Beginning around the spring 2012 and continuing until around summer 2013, CREAGER bought large quantities of synthetic cannabinoids through JOHNSON, BOWEN and BERNIER. In turn, CREAGER distributed those synthetic cannabinoids to other retailers in Colorado, including MARTINEZ. All the participants in the conspiracy were aware that the object was to distribute new drugs and circumvent regulation by the FDA and DEA. The fact that there was always a false representation on the packaging that the product was "Not for Human Consumption" was an unavoidable indication that the products were illegal.  The members of the conspiracy knew that the product was a "marijuana substitute" designed to be smoked for the purpose of "getting high."  There was no other use for the product. It was marketed, distributed and sold to consumers as a smoke product by CREAGER, CHASTAIN, MARTINEZ, KARFIAS, CHRISTENSEN and  DANDIA through various businesses in their respective states, with the false statement on the packaging. Each of these individuals knowingly joined the conspiracy to defraud the FDA and DEA. The false representation was intended to hide the illegal nature of the product from agencies that regulate such products, including the FDA which regulates new drugs, and DEA which regulates controlled substances. All of the synthetic cannabinoid products distributed in the conspiracy were new drugs subject to approval by the FDA, and

whose labeling was subject to the same approval process. However, none of those products were ever submitted to the FDA for approval, or approval of their labeling, through the new drug approval application process.

In late 2012 or early 2013, BOWEN and BERNIER moved the manufacturing operations to Florida. On numerous occasions prior to moving operations to Florida, BOWEN and BERNIER imported chemicals that were seized by law enforcement, putting BOWEN, JOHNSON and BERNIER on further notice the products were illegal. To avoid additional seizures, BOWEN opened a mailbox in New Hampshire to receive shipments of chemicals from China. The mailbox facility was instructed to automatically ship the items received, including chemicals for producing the synthetic cannabinoids, to BOWEN's residence in Florida. Eventually, BOWEN moved back to Las Vegas, but BERNIER continued to manufacture and distribute synthetic cannabinoids from his address in Florida with chemicals and Damiana BOWEN ordered from China and Mexico respectively. BOWEN and JOHNSON electronically invoiced orders from retailers and wholesalers to BERNIER, who would then fill the orders and send the product to the addresses associated with the ordering retailer or wholesaler.

In the fall of 2013, BOWEN, BERNIER and JOHNSON, through their retailers and wholesalers, began selling a product brand named "Sunburst." This product contained a chemical known as AB-Fubinaca. Throughout the period of the distribution conspiracy, BOWEN and JOHNSON monitored the controlled substances list in order to "stay ahead of the DEA." As part of the listing process, the DEA publishes notices of substances it intends to put on the list. AB-Fubinaca was scheduled to be put on the controlled substances list on February 10, 2014. In anticipation of its change of status,

BOWEN and JOHNSON pushed their Sunburst product. In spite of knowing the active ingredient was on the controlled substances list, they continued to sell and distribute the product. Because the product was not labeled with ingredients, or directions for use, the retailers and wholesalers did not know this particular product contained a controlled substance, but they knew it was a new drug because it was sold to consumers to "get high" as a marijuana substitute.  They were also aware of the false statements on the packaging and that its purpose was to avoid regulation by the FDA and DEA, among others. At all times, BOWEN was the organizer and leader of this criminal enterprise.

**B.** **Section 2: Government's Proffer as to Specific Statements**: See Attached Exhibit "1". (Exhibits/Attachments to Exhibit "1" will be filed separately).

WHEREFORE, the Government makes this initial disclosure to the Court and defense counsel.  The Government reserves the right to present additional evidence as to the conspiracy and co-conspirator statements in the event that new evidence, which is becomes available prior to trial.

DATED this 19th day of December, 2014.

                                    Respectfully submitted,

                                    JOHN F. WALSH
                                    United States Attorney

By: *s/ Jaime Pena*_____
Jaime Pena
Assistant U.S. Attorney
U.S. Attorney's Office
1225 Seventeenth Street, Ste. 700
Denver, Colorado 80202
Telephone: (303) 454-0100
E-mail:  jaime.pena2@usdoj.gov
*Attorney for the United States*

## CERTIFICATE OF SERVICE

       I hereby certify that on this 19th day of December, 2014, I electronically filed the foregoing **GOVERNMENT'S RESPONSE (1) TO DEFENDANT ORLANDO MARTINEZ'S MOTION FOR PRETRIAL DETERMINATION OF ALLEGED CO-CONSPIRATORS' STATEMENTS PURSUANT TO F.R.E. 801(d)(2)(E) AND A *JAMES* HEARING (Doc. #289) and (2) TO DEFENDANT DONALD CREAGER'S MOTION FOR *JAMES* HEARING (*IN LIMINE* DETERMINATION OF ADMISSIBILITY OF RULE 801(d)(2)(E) STATEMENTS) (Doc. #298)** with the Clerk of the Court using the CM/ECF system which will send notification of the same to any and all counsel of record.

                                                       By: *s/ Solange Reigel*
                                                       SOLANGE REIGEL
                                                       Paralegal Specialist
                                                       United States Attorney's Office
                                                       1225 17th Street, Suite 700
                                                       Denver, CO 80202
                                                       Telephone: 303-454-0100
                                                       Facsimile: 303-454-0409
                                                       E-mail: Solange.Reigel@usdoj.gov